UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  10-21045-CIV-MORENO**

TIANDRE WILLIAMS, ANTOINE WILLIAMS,

      Plaintiffs,

vs.

MIAMI-DADE COUNTY, OFFICE JOSE DE LA
PAZ, OFFICER ROLAND GARCIA,

      Defendants.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

In April 2006, Plaintiffs were arrested by the Defendant Officers at the scene of a street fight in Miami. Based on the circumstances surrounding their arrests, Plaintiffs' filed a six-count complaint against the county of Miami-Dade and two police officers in their official capacities alleging excessive use of force, failure to intervene, and assault and battery. Defendants' have filed a motion for summary judgment as to five of these six counts. For the reasons stated below, the Court GRANTS summary judgment in favor of Defendants on all five counts.

### I. Background

On April 19, 2006, around the intersection of 157th Street and Northwest 22nd Avenue, two Miami-Dade County Police officers responded to an emergency call involving a fight in the middle of the street. At the scene, the officers encountered the two Plaintiffs, Antoine Williams and Tiandre Williams, who are brothers. At the time, Antione was 18 years old, 6 feet tall and weighed approximately 175 pounds, and Tiandre was 16 years old, 5 foot 7 inches tall and weighed approximately 150 pounds. There is some factual dispute as to whether the Plaintiffs were beating

up another male in the fight or were trying to separate the fight, but the officers saw both Plaintiffs in the middle of the fight. When the officers arrived, the fight began to disperse, but the officers moved to arrest Antione based on their belief that he was involved. Antione anticipated that he would be detained, so he laid on the ground on his stomach. Plaintiffs allege that Officer Garcia then kicked Antione's torso three times while he laid on the ground. Officer Garcia then arrested and handcuffed Antione and placed him incorrectly into the police car such that his body was positioned halfway out the door. Plaintiffs allege that Officer Garcia then opened and closed the car door on the handcuffed Antione's body multiple times, and eventually tasered him before pushing him fully into the car and shutting the door.

During the apprehension and arrest of Antione, a crowd of approximately 100 individuals quickly surrounded the officers, including the other Plaintiff, Tiandre. Out of concern for their safety, the officers drew their guns and ordered everyone to get back. After this instruction, and with their drawn weapons in plain sight, Tiandre moved through the crowd to approach the officers and asked them why they were arresting his brother. Tiandre was unarmed, holding his palms open and upward in a posture of supplication, and came within several feet of the officers during the tense and rapidly-involving situation. Officer Garcia had had previous contact with Tiandre and believed Tiandre to have a temper problem. Upon the advice of Officer Garcia and in light of the increasingly chaotic situation, Officer de la Paz made the split-second decision to re-holster his weapon and grab Tiandre in a Lateral Vascular Neck Restraint ("LVNR"), also known as a choke hold. The Miami-Dade County Police Department Standard Operations Manual has a written policy regarding the use of LVNR under a section entitled "Nonlethal Weapons and Procedures."

## II. Standard of Review

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III. Legal Analysis

Count I: § 1983 Excessive Force Claim Against the County

In order for Plaintiffs to survive a motion for summary judgment on their § 1983 claim against the county, they have to show either that a final County policymaker adopted an official policy that subjects the county to liability as a matter of law or that a final policymaker for the County has endorsed or promulgated an unofficial policy or practice that subjects the county to liability. *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). Under either scenario, Plaintiffs "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* at 1330 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

The County has moved for summary judgment under both theories, and the Plaintiffs'

Response has only challenged the County's arguments that there is no official policy subjecting the County to liability. Accordingly, Plaintiffs have conceded the argument that the County endorsed an unofficial policy or practice subjecting it to liability. Thus, the only issue for this Court to decide is whether a final policymaker for the County adopted an official policy regarding officers' use of force that subjects the County to liability.

Plaintiffs identify the Miami-Dade County Police Department's Use of Force Policy as the official policy that subjects the County to liability. This policy was issued by the Miami-Dade County Police Director ("the Director"). Prior decisions in this district and by this very Court bar Plaintiffs from arguing that the Director is a final policymaker for purposes of § 1983 municipal liability; only the Miami-Dade Board of County Commissioners and the County Manager are final policymakers under the County Charter and Code. *See Williams v. Santana*, No. 06-22565-CIV, 2008 WL 2811219, *9 (S.D. Fla. July 18, 2008) (Moreno, J.). Instead, Plaintiffs argue that the County Manager delegated final policy making authority to the Director on use of force policy and that Officer De La Paz was following this policy when he choked Plaintiff Tiandre Williams.

There are two ways in which this delegation could have occurred: as a *de facto* delegation or a direct delegation. Plaintiffs do not argue that there was a direct delegation of policymaking authority from the Board or County Manager to the Director, but only that there was a *de facto* delegation.

While the County concedes that the Board and the County Manager are empowered to delegate final policymaking authority to the Director, the County argues there is no evidence demonstrating that a delegation actually occurred here, and in fact, that the evidence shows the contrary. For a *de facto* delegation to occur, "the delegation must be such that the decision is not

subject to review by the policymaking authority." *Matthews v. Columbia County*, 294 F.3d 1294,

1297 (11th Cir. 2002) (citing *Scala v. City of Winter Park*, 116 P.3d 1396, 1399 (11th Cir. 1997)).

As a matter of law, no *de facto* delegation could have occurred here because the Director is under

the jurisdiction of, and subject to the administrative orders and regulations of, the County Manager,

and additionally the actions of the Director are restricted and subject to review by both the Board and

the County Manager. *See City of St. Louis v. Prapotnik*, 485 U.S. 112, 124 (1988). Under *Prapotnik*,

the Use of Force Policy that the Director created was not the final policy for the County because it

was subject to the review of the Board and the County Manager. Moreover, the County argues that

neither the Board nor the County Manager ratified or adopted any unconstitutional policy or decision

made by the Director.

Plaintiffs attempt to distinguish *Prapotnik* and its progeny as only being relevant to the

delegation of authority to exercise discretion, not to a situation in which "a particular decision by a

subordinate was cast in the form of a policy statement." *Id.* at 130. Plaintiffs argue that in the instant

case the Director was creating use of force policy, not just exercising his discretion on a specific

decision. In other words, Plaintiffs argue the Director made a policymaking decision on use of force,

not a discretionary decision, when he issued the Miami-Dade County Police Department Manual.

However, the mere fact that the Director created a manual with provisions entitled with the

word "policy" does not convert his action into a policymaking decision instead of a *Prapotnik*

discretionary decision. As already explained, there could not have been a *de facto* delegation of

policymaking authority to the Director. The fact that the term "policy" was included in the Police

Manual is insufficient to support the claim that the Director was officially delegated final

policymaking authority. Accordingly, the County is entitled to summary judgment as to Count I.

Counts II: Violation of Civil Rights by Officer de la Paz

The Officer Defendants argue that they are entitled to qualified immunity against these claims and thus should be granted summary judgment. A federal court applies a two-part test to determine whether an officer's actions are entitled to qualified immunity: (1) whether the facts as alleged show that the officer's conduct violated a constitutional right; and if so (2) whether such a right was clearly established. *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007). A federal court has the discretion to decide which of these parts should be addressed first based upon the circumstances of each case. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

To determine whether an officers' actions violated a Plaintiff's constitutional rights, courts measure the level of force used against (1) the severity of the crime, (2) the immediacy of the threat posed by the suspect, and (3) whether the suspect sought to evade or resist arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002)(citing *Graham*, 490 U.S. at 397). Additionally, the court must consider "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." *Id.* at 1198 n.7. The Supreme Court has established that "all claims that law enforcement officers have used excessive force–deadly or not–in the court of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under" a reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine the reasonableness of an officer's conduct, the facts must be analyzed from the perspective of a reasonable officer on the scene with knowledge of the pertinent circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate. *Scott*, 127 S. Ct. at 1769.

The events in question here occurred as the Defendant Officers were responding to an

emergency call regarding a fight on the streets near a school where fights had frequently occurred. Upon their arrival, the Officers found the intersection blocked by approximately one hundred individuals who were acting wildly, cursing and screaming so loudly that the crowd could be heard almost two blocks away. The Officers announced to the crowd to stop fighting, disburse and get out of the road, but the fight continued until the Officers began to get out of their car. Those involved in the fight began to flee when the Officers got out of their car, including Plaintiff Antione. The Officers pursued and arrested him for fighting. During the course of this arrest, the crowd caught up to the Officers and began yelling, screaming and encircling them closer and closer. It was in this context that Plaintiff Tiandre, whom the officers had seen at the fight, approached the officers through the crowd.

Officer de la Paz's decision to contain Tiandre by applying the LVNR was objectively reasonable in light of the tense and potentially dangerous situation surrounding them. Plaintiff Tiandre approached them, challenging their arrest of his brother, while a large, hostile crowd surrounded the officers and while their guns were drawn and in plain view. Officer de la Paz had legitimate cause to fear for his safety and the safety of those around him because of the size of the crowd and the escalating tension of the scene. ("Even if we accept that the threat posed...was not immediate...the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007)). Accordingly, Officer de la Paz's conduct did not violate a constitutional right. For all the reasons discussed above, Officer de la Paz is entitled to qualified immunity and summary judgment as to Count II.

<u>Count IV: Violation of Civil Rights by Officer Garcia for Failure to Intervene</u>

Defendants argue that Officer Garcia is entitled to summary judgment for two reasons. First, a claim for failure to intervene requires an underlying act of excessive force and Officer de la Paz did not act with excessive force when he used a choke hold on Tiandre. Second, there was insufficient time for Officer Garcia to intervene on behalf of Tiandre, which is another requirement before liability can be imposed upon an Officer for failing to intervene. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

Officer Garcia is entitled to summary judgment on both grounds. First, this Court has already ruled that Officer de la Paz did not employ excessive force when he applied an LVNR to Tiandre. Second, when Officer de la Paz was applying the LVNR, Officer Garcia was almost simultaneously occupied with the arrest and restraint of Antione.

<u>Count V: Assault and Battery under Florida law</u>

Plaintiffs' argue that the county should be liable for the assault and battery committed by its Officers under a theory of vicarious liability. However, under Florida law the county is immune from the liability of its employees arising from willful or intentional torts, and the Plaintiffs have pled that the officers' conduct was willful, wanton and malicious in counts II and III. To overcome this immunity, Plaintiffs' argue in the alternative that the officers' conduct was merely negligent, not willful and malicious. In their amended complaint, they plead this count carefully to avoid any language that would suggest malice or intent. As a negligence action against the county, the officers' action is reviewed under a "reasonableness" standard. Plaintiffs' argue there are material facts in dispute regarding whether the officers' conduct was reasonable under this negligence standard and thus summary judgment should be denied.

Plaintiffs are allowed to pursue alternative theories of recovery, and it is true that the county could be held liable for the negligent acts of their officers. *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996). However, in order for this claim to succeed, Plaintiffs are required to plead a "distinct act of negligence" that "pertain[s] to something other than the actual application of force during the course of the arrest." *Id.* The Plaintiffs fail to do so, pinning the negligence component to the officers' use of a choke hold and a taser on the Plaintiffs. These are the same acts that support their excessive force claim, and therefore are not distinct acts of negligence. Accordingly, the County is entitled to summary judgment as to Count V.

Count VI: Malicious Prosecution by Officers de la Paz and Garcia

Defendants' are entitled to summary judgment as to Count VI because the Plaintiffs' claim fails as a matter of law. The plaintiffs failed to present any factual basis to support one of the elements of this claim: the presence of malice in the commencement of an original criminal proceeding. Plaintiffs cannot simply include the word "malice" in their pleading without facts supporting such an allegation. *Nelson v. Prison Health Servs.*, 991 F. Supp. 1452, 1465 (M.D. Fla. 1997). Second, Defendants were not responsible for the commencement of any legal proceedings against Plaintiffs but rather the State Attorney's Office was responsible. Finally, Plaintiffs did not plead or cite any facts demonstrating that the proceedings were instituted in the absence of probable cause.

## IV. Conclusion

THIS CAUSE came before the Court upon the Defendant's Motions for Summary Judgment **(D.E. No. 74)**, filed on **October 12, 2011** and **(D.E. No. 77)** filed on **October 14, 2011.**

THE COURT has considered the motion, response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED. Counts I, II, IV, V and VI. are dismissed against Defendants. Count III will continue to trial.


DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of January, 2012.


_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE


Copies provided to:
Counsel of Record